UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| OSCAR GARCIA, IRENE JIMENEZ, GEORGE OLSON, JOSEPH BROWN, LESLIE MARTIN, SHEILA FLOWERS, MARSHAWN DIXON, JOHN LENGEBIE, ERIC WILLIAMS, BRANDON OFFETT, GREGORY HENDERSON, and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> R.J.B. PROPERTIES, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) No. 06 C 4994 ) ) Judge Rebecca R. Pallmeyer ) ) |

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this case are employed by R.J.B. Properties, Inc. as custodians at several suburban high schools. Their complaint alleged several violations of the Fair Labor Standards Act: that Defendant had failed in certain instances to pay overtime compensation (Count I); that Defendant failed to include an hourly health benefit allowance as part of Plaintiffs' base pay for purposes of calculating the appropriate overtime rate (Count II); and that in calculating the hours of overtime pay, Defendant failed to combine hours that Plaintiffs worked at multiple work sites (Count III). Defendant was slow in responding to discovery; once it was complete, Plaintiffs voluntarily withdrew Counts I and III.

This court then granted Plaintiffs' motion for summary judgment on Count II, as the law clearly supports this claim: Defendant paid the health benefit to Plaintiffs directly, and Plaintiffs were free to use those funds for any purpose they chose. Thus, excluding the benefit from Plaintiffs' hourly rate violates the Fair Labor Standards Act. The Act, 29 U.S.C. § 207(a)(1), requires employers to pay overtime hours at one-and-one-half times the employees' regular rate of pay, an amount defined as the rate "actually paid the employee" for his normal work hours. *See Walling*

*v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). When, as in this case, a health insurance allowance is paid directly to the employees, such payments must be included in the regular rate of pay for the purposes of overtime calculations. *See Barnes v. Akal Security, Inc.*, No. 04-1350-WEB, 2005 WL 1459112, *2 (D. Kan. June 20, 2005), citing *Local 246 Util. Workers Union v. Southern Cal. Edison Co.*, 83 F.3d 292, 296 (9th Cir. 1996). Defendant appealed the judgment in favor of Plaintiffs but ultimately withdrew their appeal.

Plaintiffs now seek an award of attorneys fees in the amount of $111,775.52, and an additional $549.12 in costs. The Fair Labor Standards Act contemplates an award of fees to a prevailing party, 29 U.S.C. § 216(b), but Defendant argues that the amount sought is excessive in proportion to the sums ultimately recovered by Plaintiffs. In addition, Defendant objects to one attorney's claimed hourly billing rate and to Plaintiffs' attorneys' practice of billing time in one-quarter-hour increments and "block billing"—that is, listing all of the activities performed on the case in a day with a single hourly total, rather than identifying how much time was devoted to each activity. Finally, Defendant notes its suspicion that this lawsuit was somehow financed by the Service Employees International Union, the union that represents Plaintiffs for collective bargaining purposes. For the reasons set forth here, those objections are largely overruled.

## **DISCUSSION**

Under the Fair Labor Standards Act ("FLSA"), prevailing plaintiffs are entitled to recover reasonable attorneys' fees and costs. 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."); *see also Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir.1999). The "most useful starting point for determining the amount of a reasonable fee" is the lodestar amount, that is, the figure that results from multiplying the number of hours expended by plaintiff's counsel by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The determination of the lodestar amount does not end the inquiry, however,

2

because other considerations may militate in favor of adjusting the fee award upward or downward. *Id.* at 434. Among the additional elements that the court may consider is the crucial factor of "results obtained"; if a plaintiff has achieved only partial or limited success, the district court may reduce the fee award to reflect the degree of success obtained. *Id.* at 436-37. On the other hand, "[w]hen a plaintiff has obtained an excellent result, his attorney should recover a fully compensable fee (i.e., the modified lodestar amount), and the fee 'should not be reduced simply because the plaintiff failed to prevail on every contention of the lawsuit.'" *Spegon,* 175 F.3d at 557 (quoting *Hensley*, 461 U.S. at 435). Success is not measured only by the amount of damages that an individual plaintiff recovers, although that factor is "certainly relevant to the amount of attorney's fees to be awarded." *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). A successful plaintiff also vindicates important statutory rights, and ensures that a statutory violation will not be repeated with other employees.

**I.    Plaintiffs are Prevailing Parties**

It is undisputed that Plaintiffs won summary judgment in their favor on Count II of their complaint. (As noted, the original complaint included two other claims, but counsel withdrew them after discovery, presumably a conscientious response to the determination that those claims were not supported by the facts.) Defendant nevertheless suggests that Plaintiffs were not prevailing parties because Plaintiffs "are now in a worse position today then [sic] they were prior to filing the lawsuit . . . because plaintiffs will no longer receive a health stipend to minimize the health care costs." (R.J.B. Properties, Inc.'s Response to Plaintiffs' Fee Petition [100] (hereinafter, "Defendant's Response"), at 2.) If the court understands this statement accurately, it means that Defendant has chosen to withdraw a portion of the compensation its workers had been receiving in retaliation for their having prevailed in this lawsuit. Defendant's cynical response to a lawsuit brought to vindicate its workers' statutory rights cannot be a basis on which the court should deny an award of attorneys' fees. The court is satisfied that Plaintiffs are prevailing parties.

## II. Plaintiffs' Hourly Billing Rates are Reasonable

Determination of an appropriate award begins with the lodestar, that is, the amount that results from multiplying the number of hours expended by counsel by a reasonable hourly rate. The court turns, first, to the hourly billing rate. Four attorneys (Ryan Haggerty, Margaret Angelucci, Librado Arreola, and Marvin Gittler) worked on the case, as well as a number of law clerks. With respect to the hourly billing rates claimed by these lawyers, Defendant objects only to the $325.00 per hour rate claimed by Mr. Haggerty. In support of that rate, Plaintiffs have submitted Mr. Haggerty's own affidavit, in which he explains his law firm's billing practices, including its practice of representing labor organizations at fixed retainer amounts, resulting in an hourly recovery that varies from project to project. In cases in which he has represented prevailing plaintiffs, Mr. Haggerty has been awarded fees at substantial hourly rates, including an award at the rate of $325 hour by Judge St. Eve of this court. (Declaration of Ryan A. Haggerty, Exhibit 23 to Plaintiffs' Petition for Attorneys' Fees and Costs [98-23], ¶¶ 11, 15.) In addition, Plaintiffs have offered declarations from experienced labor and employment law practitioners (Joc Cotiguala, Douglas Werman, and Jeremy Glenn) attesting to the reasonableness of Mr. Haggerty's claimed rate.

Against this, Defendant offers only the assertion that "the fees should be lowered because of the economic conditions" and that the hourly rates charged by Defendant's own attorneys (unidentified by name, credentials or experience) are lower. (Defendant's Response, at 12.) As Plaintiffs observe, however, changes in the economy are presumably reflected in the appropriate market rate; Defendant has not supported this assertion with evidence that Mr. Haggerty's claimed rate is higher than the market. Defendant bears the burden of rebutting Plaintiffs' claimed hourly rates, *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996), and has not met that burden. The court will award $325 per hour for time that Mr. Haggerty reasonably devoted to this litigation.

## III. Plaintiffs' Recovery Supports a Substantial Award

The number of hours reasonably devoted to this case is also disputed. In this regard, Defendant's central argument is that Plaintiffs' recovery was so modest that it does not justify such a substantial fee award as Plaintiffs are seeking. Defendant presents this argument in several ways: the response brief summarizes Defendant's contentions as including the arguments that "Plaintiffs' . . success is *de minimis* and insignificant," that "no reasonable attorney would charge a client [so much] to obtain [so little]," and that "[t]he hours billed are not reasonable compared to the success that plaintiffs obtained." (Defendant's Response, at 12, 13.)

The Seventh Circuit has been consistent in acknowledging that "proportionality concerns are a factor in determining what a reasonable attorney's fee is." *Moriarty v. Svec*, 233 F.3d 955, 967-68 (7th Cir. 2000). "Even if plaintiff is a prevailing party, the district court may deny attorney's fees—on the ground that no amount of fees would be reasonable—if plaintiff's recovery is merely technical or *de minimis*." *Fisher v. Kelly*, 105 F.3d 350, 352 (7th Cir. 1997). Moreover, if a party "had incurred attorney's fees that were disproportionate to a reasonable estimate of the value of its claim, it could not recover all those fees, but only the reasonable proportion, which is to say the amount that would have been reasonable to incur had the value of the claim been estimated reasonably rather than extravagantly." *Tuf Racing Products, Inc. v. American Suzuki Motor Corp.*, 223 F.3d 585, 592 (7th Cir. 2000). Still, the Seventh Circuit has refused to adopt "any mechanical rules requiring that a reasonable attorney's fee be no greater than some multiple of the damages claimed or recovered." *Moriarty*, 233 F.3d at 968.

More recently, our Court of Appeals addressed the issue of "proportionality" in attorneys' fees award at some length. In *Anderson v. AB Painting & Sandblasting Inc.*, 578 F.3d 542, 544-45 (7th Cir. 2009), the court explained that "[p]roportionality can refer to multiple concepts," including "a comparison between a plaintiff's damages and his attorney's fees." *Anderson* was an action by pension fund trustees for unpaid contributions; the district court had drastically reduced the plaintiffs' attorney's fee request as excessive, even though the plaintiffs recovered the entire

5

amount of the claimed deficiency in pension fund contributions that gave rise to the litigation in the first place. The Seventh Circuit reversed, reasoning that even though the fee request was more than seven times the amount of damages, there may have been good cause for the expenditure of fees. *Id.* at 546-47. The court noted that the claim seemingly "could have been resolved at a greatly reduced cost if [defendant] had cooperated with discovery requests and settlement discussions, obeyed the district court's orders, and not filed a serious of frivolous motions after the court had already entered judgment for the [plaintiffs]." *Id.* at 546.

In evaluating the issue of proportionality here, the court declines to characterize Plaintiffs' recovery as *de minimis*. Plaintiffs in fact prevailed fully on Count II, the only claim on which they ultimately sought judgment. The actual amount of unpaid overtime recovered was modest—a bit more than $6,000—but, as Plaintiffs note, they recovered liquidated damages as well, and won a total of $12,024.60. Had Plaintiffs won every cent possible on Count II, their recovery would have exceeded that amount only by $1,397.48, an additional amount they would have been entitled to, had they proven that Defendant's violation of FLSA was willful. Plaintiffs were themselves sensitive to the proportionality issue and chose, "[i]n light of Defendant's resistance in settlement" and the difficulties in discovery, to abandon the willfulness claim. (Plaintiffs' Reply, [101], at 4.) And, recognizing that two of the three counts in the original complaint were ultimately withdrawn, Plaintiffs have voluntarily reduced their fee request by some 62.20 hours. Nor is the court troubled by the fact that a small number of the Plaintiffs recovered no damages at all.[1] Defendant offers no authority for the argument that failure to recover damages for every individual Plaintiff supports the conclusion that the attorneys who represented all Plaintiffs are not entitled to a full award of fees for the hours devoted to the litigation.

---

[1] Defendant urges that 15 out of the 58 Plaintiffs recovered nothing, but as Plaintiffs point out, and the court's review confirms, the spreadsheet attached as Exhibit A to Defendant's Response shows there were 12 workers who recovered no unpaid overtime wages (Lengebie, Gonzalez, Johnson, Arsberry, Henderson, Andrade, Aguilero, Moreno, Sustaita, Smith).

At root, Defendant's argument boils down to the suggestion that the small amount Plaintiffs ultimately recovered was not "worth" the costly effort. But *Anderson* makes clear that this issue is not one for the court's consideration:

> Reasonableness has nothing to do with whether the district court thinks a small claim was "worth" pursuing at great cost. Fee-shifting statutes remove this normative decision from the court. If a party prevails, and the damages are not nominal, then Congress has already determined that the claim was worth bringing. The court must then assume the absolute necessity of achieving that particular result and limit itself to determining whether the hours spent were a reasonable means to that necessary end.

*Anderson,* 578 F.3d at 546. *Anderson* teaches that in assessing "reasonableness," the court is not free to second-guess Congress's determination that the Fair Labor Standards Act is worthy of enforcement and that plaintiffs who prove a violation of that Act are entitled to recovery of the fees that such litigation reasonably costs. Moreover, the court's own observations confirm Plaintiffs' assertions that they themselves were "well aware of the fact that the amounts sought through this fee contest are disproportionate to the amounts recovered in this case." (Plaintiffs' Reply, at 5.) Plaintiffs' attorneys themselves raised the issue with Defendant, urging a prompt resolution of the case. It took several months for Defendant to produce time records that should readily have been available and may have resulted in Plaintiffs' withdrawing Counts I and III and seeking judgment on Count II far sooner. Defendant's "proportionality" objection must be overruled.

### IV. Records Substantially Support the Hours Claimed

The court turns, then, to consideration of the number of hours counsel for Plaintiffs reportedly devoted to the litigation. Defendant argues that the time devoted to this case by law clerks was excessive; that attorneys improperly engaged in administrative work; that counsel's practices of billing in one-quarter hour increments and of "block billing" were improper; and that the involvement of SEIU in this litigation raises suspicions that the hours attributed to this litigation are excessive. The court addresses these arguments briefly.

#### A. Law Clerk Time

Defendant's objection to the time devoted to this case by law clerks bears little discussion. As Plaintiffs explain in their reply memorandum, the process of reviewing pay records to determine the recovery due to each worker was a tedious one, and required review, for each worker, of the hours worked in various pay periods (sometimes at more than one location), and the health insurance stipend, which itself varied. (Plaintiff's Reply, at 9-10.) And Defendant's own attorney time records reveal that Defendant's attorneys devoted time to legal research on the same issues researched by law clerks working for Plaintiffs' counsel. Had Plaintiffs' attorneys chosen to conduct this research at their higher billing rate, the total recovery Plaintiffs now seek presumably would be greater. This objection is overruled.

### B. Administrative Work

Defendant contends Plaintiffs' lawyers engaged in administrative tasks, but identify only a single time entry: Attorney Haggerty's 3.75 hour entry for a variety of activities, including work involving obtaining translation for certain Spanish-language documents. (Defendant's Response, at 11-12.) Plaintiffs' reply memorandum explains that this activity was complicated by the fact that the documents to be translated were protected by the attorney-client privilege, and obtaining appropriate assurances of confidentiality from the translation service required decision-making that non-legal staff "are not qualified to make." (Plaintiff's Reply, at 13.) Plaintiffs estimate, further, that this work consumed less than one hour of the time at issue. This objection is overruled.

### C. Billing Practices

Defendant objects to Plaintiffs' attorneys' practices of billing their time in quarter-hour increments and "block" billing. Both practices could result in an inflated fee request, but the court does not share Defendant's suspicion that it happened in this case.

Citing case law from other jurisdictions that frown on the practice of billing in quarter-hour increments, Defendant lists ten time entries it deems particularly suspicious. Our own Court of Appeals has not discussed the reasonableness of billing in quarter-hour increments, but a number

of district judges within this circuit have considered the matter and, in the main, have found "nothing inherently objectionable" about the practice. *See Chao v. Current Development Corp.*, No. 03 C 1792, 2009 WL 393862, *5 (N.D. Ill. Feb. 13, 2002) (Schenkier, M.J.) Thus, in *Morimanno v. Taco Bell*, 979 F. Supp. 791, 799 (N.D. Ind. 1997) (Lee, C.J.), the district court ruled that "[b]illing by the quarter-hour does not *ipso facto* call for a reduction . . . . If [plaintiff's counsel] charges their paying clients by the quarter-hour, then there is no reason they should be forced to adjust their usual billing procedures just because [defendant] . . . does not pay their lawyers in the same way." *See also Herrojon v. Appetizers And, Inc.*, No. 97 C 5149, 1999 WL 116598, at *3 (N.D. Ill. Feb. 22, 1999) (Kocoras, J.). Billing in tenths of hours might be a better practice, but this court agrees with its colleagues that if the firm's standard practice is to bill in quarter-hour increments, it is not required to adopt a different practice in fee-shifting cases. *See, e.g., Branham v. Snow*, No. 1:01-CV-0152-JDT-WTL, 2006 WL 1750443 (S.D. Ind. June 19, 2006) (Tinder, J.); *Welsh v. Halter*, No. 99 C 8049, 2004 WL 1595249 (N.D. Ill. July 14, 2004) (Gottschall, J.); *Willis v. Barnhart,* No. 99 C 3437, 2002 WL 31779907 (N.D. Ill. Dec. 11, 2002) (Coar, J.); *Harper v. Massanari*, No. 99 C 7393, 2002 WL 1998302, at *2 (N.D. Ill. Aug. 28, 2002) (Andersen, J.). Notably, the time entries that Defendant identifies as potentially "padded" by this practice account for a total of no more than four and a half hours.

Nor is the court troubled by the practice of "block billing" in this case. "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Trust of Chicago,* 433 F.3d 558, 569 (7th Cir. 2006). "There is nothing inherently wrong with combining multiple tasks into one entry . . . ." *Dupuy v. McEwen*, 648 F. Supp. 2d 1007, 1029 (N.D. Ill. 2009) (citations and alterations omitted). The court must decide whether the entries are detailed enough for the opposing party and the court to determine whether the time billed accurately reflects the time spent on the case. *Id.*

That test is met in this case, because counsel's activities are described in detail and amply

9

justify the number of hours assigned. An example suffices; Mr. Haggerty's time entry for March 24, 2008 describes the following work:

> Email to Kytrah re: courtesy copy letter to Judge Pallmeyer enclosing recent court filings. Brief conference with Margaret Angelucci re: reply brief. Review of Defendant's response to our motion for summary judgment and other filings related thereto. Research regarding case authority to support the proposition that the fact that certain plaintiffs did not work overtime or did not receive stipends is a matter to be determined during he damages phase of the litigation. Prepared reply to Defendant's response.

(Exhibit 1 to Plaintiffs' Petition for Attorneys' Fees and Costs [98-1], at 10.) For all of these activities, Mr. Haggerty billed just three hours. The court is confident that, whatever the merit of "block billing" may be in other contexts, it did not result in abuse in this case.

### D. Counsel's Relationship with SEIU does not Support a Fees Reduction

Based upon its review of the time records and a conversation with a union official, Defendant suspects the SEIU has financed this litigation. Plaintiffs insist there is no truth in this suspicion, and the court agrees that the issue is, in any event, irrelevant to the question of what fees Plaintiffs are entitled to recover. Nor does the fact that Plaintiffs' lawyers also include the SEIU among their clients raise any red flags.

Defendant is correct, of course, that time devoted to conferences or meetings that Plaintiffs' counsel had with SEIU officials is not recoverable unless those efforts were necessary for proceeding in ths case. Plaintiffs insist that this test was met here, and the time records they have produced generally confirm this assertion. The only exceptions are the time entries for Attorney Margaret Angelucci of 1.5 hours for August 1, 2006, and .5 hours for August 4, 2006. Those entries refer to telephone calls, but say so little about the content of those calls that the court is unable to determine how the calls contributed to Plaintiffs' success in this litigation. Ms. Angelucci's time entry of .25 hours for August 7, 2006, on the other hand, related to scheduling interviews with the individual Plaintiffs, and on August 10, 2006, Ms. Angelucci billed .75 hours to speak to individual Plaintiffs. On August 15, 2006, both Ryan Haggerty and Margaret Angelucci evidently had

conversations with union officials, but their time entries for those dates make it clear that the bulk of their time was devoted to legal research and preparation of the complaint. The court is not troubled by Margaret Angelucci's entry of .5 hours for September 11, 2006; on that date, Ms. Angelucci had a phone call and reviewed an e-mail message on which representative Plaintiffs' names were listed.

The court sustains Defendant's objection to 2 hours of time at Ms. Angelucci's hourly rate. The objection arising from counsel's relationship with SEIU is otherwise overruled.

**V.    Costs**

The court turns, finally, to the issue of costs. Plaintiffs' Petition seeks an award of costs in the amount of $549.12. The court has not located a Bill of Costs in the record, and neither side has made any mention of the matter in the briefs. Exhibits 35 and 36 to the Petition, however, consist of three receipts: One for the court filing fee in the amount of $350.00, and two for service of process in the amount of $55.00 each. Exhibit 21 is a copy of a letter from Defendant's counsel, objecting to Plaintiffs' request for costs, except for the amounts spent for filing fee and service of process. The court will award those costs only, a total of $460.00 ($350.00 + $55.00 + $55.00).

## **CONCLUSION**

The court awards attorneys' fees in favor of Plaintiff in the amount of $110,005.52 (the amount requested, less two hours of Ms. Angelucci's time at the rate of $400 per hours) and costs in the amount of $460.00. To the extent Plaintiff seek additional fees incurred after the briefing of the fee petition, a supplemental petition will be required. The parties are again encouraged to settle this dispute.

ENTER:

Dated: July 19, 2010

_____
REBECCA R. PALLMEYER
United States District Judge